| | |
|---|---|
| MARY B. RUDOLPH, RUDOLPH- RAAD, INC. and FAMILY FORUM, INC., **Plaintiffs,** v. **BEACON INDEPENDENT LIVING LLC, FRANK MCCOLLUM, BRUCE L. BLEIMAN, ANTOINE LASSITER, ED BOWERS, in his capacity as Receiver for Charlottetown Manor, Inc., WIND N SEA HOLDINGS, LLC, and WESLEY L. DEATON and ROBERT BURRIS, Substitute Trustees of that Deed of Trust executed by Rudolph-Raad, Inc., dated the 28th day of June, 2002, and recorded July 1, 2002 in Book 13761, Page 926 of the Mecklenburg County Public Registry and re-recorded on January 17, 2003 in Book 14708, Page 79, of the Mecklenburg County Registry,** **Defendants.** | **VERIFIED AMENDED COMPLAINT** |

Pursuant to Rule 15 of the North Carolina Federal Rules of Civil Procedure, Plaintiffs Mary B. Rudolph ("Mrs. Rudolph"), Rudolph-Raad, Inc. and Family Forum, Inc., by and through their undersigned counsel, hereby amend their Complaint as follows:

## PARTIES, JURISDICTION and VENUE

1.     Mrs. Rudolph is a resident of Lincoln County, North Carolina.

2.      Mrs. Rudolph and George Raad ("Raad") are each 50% shareholders of defendant Rudolph-Raad, Inc. ("Rudolph-Raad"). Rudolph-Raad is a North Carolina corporation whose principal place of business is Charlotte, North Carolina.

3.      Family Forum, Inc. ("Family Forum") is a North Carolina non-profit corporation formed in 1979. Its principal place of business is Charlotte, North Carolina. Mrs. Rudolph is the sole director of Family Forum. There are no officers or members of Family Forum and as such Mrs. Rudolph has sole control over the business operations of Family Forum.

4.      Charlottetown Manor, Inc. ("CMI"), of which Mrs. Rudolph and George Raad are each 50% shareholders, is a North Carolina corporation whose principal place of business is Charlotte, North Carolina.

5.      Ed Bowers is the court-appointed receiver for CMI. Hereafter, Mr. Bowers shall be referred to as the "CMI Receiver."

6.      Beacon Independent Living, LLC ("Beacon") is a North Carolina LLC, whose principal place of business is Charlotte, North Carolina.

7.      Bruce L. Bleiman ("Bleiman") is a principal of Beacon and is a resident of Mecklenburg County, North Carolina.

8.      Frank McCollum ("McCollum") is a business associate of Bleiman, and is a resident of York County, South Carolina.

9.      Antoine Lassiter ("Lassiter") is a business associate of Bleiman, McCollum and Beacon and is a resident of Mecklenburg County.

10.     Wind N Sea Holdings, LLC ("Wind N Sea") is a North Carolina LLC, whose principal place of business is in Charlotte, North Carolina.

11.    Wesley L. Deaton purports to be the Substitute Trustee of that Deed of Trust executed by Rudolph-Raad, Inc., dated the 28th day of June, 2002, and recorded July 1, 2002 in Book 13761, Page 926 of the Mecklenburg County Public Registry and re-recorded on January 17, 2003 in Book 14708, Page 79, of the Mecklenburg County Registry (the "Deed of Trust"). However, Robert Burris is the actual Substitute Trustee for the Deed of Trust, pursuant to the Mecklenburg County Public Registry. Hereafter, both Mr. Burris and Mr. Deaton are referred to as ("Trustee").

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that this case involves the Federal Racketeer Influenced and Corrupt Organization Act.

13.    This Court has personal jurisdiction over all Defendants.

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that a majority of Defendants reside in this judicial district.

## GENERAL ALLEGATIONS

### Background of the Rudolphs' and Raad's business interests

15.    In 1992, Mrs. Rudolph, her husband Harry Rudolph, and Raad formed Rudolph-Raad for the purpose of acquiring property at 600 Kings Drive, Charlotte, which property came to be known as "Charlottetown Manor."

16.    Pursuant to the Articles of Incorporation, Harry Rudolph was the sole director of Rudolph-Raad and had the power to appoint officers for the corporation.

17.    Harry Rudolph appointed Mrs. Rudolph as President and Raad as Treasurer, which appointments remain in place as of the date of this Complaint.

18. Rudolph-Raad improved Charlottetown Manor so that it was suitable for use as an independent living facility for the elderly and the disabled.

19. Also in 1992, Mrs. Rudolph, Harry Rudolph, and Raad formed CMI.

20. Pursuant to the Articles of Incorporation, Harry Rudolph was the sole director of CMI and had the power to appoint officers for the corporation.

21. Harry Rudolph appointed Mrs. Rudolph as President, which appointment, remains effective as of the date of this Complaint.

22. Pursuant to an agreement between Rudolph-Raad and CMI, CMI managed Charlottetown Manor as an adult independent living facility from 1992 until approximately 2002.

23. In 1996, Family Forum, which is a non-profit corporation whose sole director is Mrs. Rudolph, became a recipient of grants from the United States Veterans Administration (the "VA") for the purpose of locating and paying for housing for disabled, homeless veterans.

24. At all relevant times in which Mrs, Rudolph operated Family Forum, it used the money it received from the VA to pay Family Forum employees and to pay CMI to provide housing for disabled veterans.

25. In 2002, Rudolph-Raad sold the Charlottetown Manor property and purchased a new facility at 3501 Independence Boulevard, Charlotte (the "Independence Facility").

26. To finance the purchase of the Independence Facility, Rudolph-Raad borrowed $872,021 (the "Indebtedness") from Branch Banking & Trust ("BB&T"). The Indebtedness was evidenced by a promissory note (the "Note"), dated June 28, 2002.

27. To secure the Indebtedness, Rudolph-Raad granted BB&T a deed of trust (the "Deed of Trust") against the Independence Facility and also assigned all leases and rents from the Independence Facility to BB&T.

28. To further secure the Indebtedness, Mrs. Rudolph, Harry Rudolph, and Raad each signed a personal guaranty in favor of BB&T.

29. On June 28, 2002, Rudolph-Raad executed a lease with CMI granting CMI exclusive possession of the Independence Facility ("CMI Lease"). The initial term of the CMI Lease ran through June 27, 2007. The CMI Lease also gave CMI the right to renew the agreement for two additional terms of five years each.

30. As rent, CMI agreed to and did pay Rudolph-Raad's monthly payment on the Note to BB&T.

31. CMI occupied and operated the Independence Facility as an independent living center.

32. In 2007, CMI properly exercised its rights to extend the lease through June 27, 2012.

33. In 2007, Harry Rudolph died, and Mrs. Rudolph inherited his shares in both Rudolph-Raad and CMI. As a result, Mrs. Rudolph and Raad are each 50% owners of both corporations.

34. At all times from 1992 until April 2011, Mrs. Rudolph had taken an active role in operating Rudolph-Raad, CMI and Family Forum.

35. At no time, from 1992 until the present, has Raad participated in the management of either of the entities in which he has an interest – Rudolph-Raad and CMI.

### Trouble Between Mrs. Rudolph and Raad

36. In the Fall of 2010, due to disputes between Mrs. Rudolph and Raad, Mrs. Rudolph attempted to purchase Raad's interests in Rudolph-Raad an in CMI. However, negotiations broke down.

37. During this time, Frank McCollum ("McCollum") contacted Mrs. Rudolph and told her he had read about CMI's business disputes and troubles in the newspaper and believed he could turn the situation around and was therefore interested in buying CMI. McCollum professed to have likewise contacted Raad, who referred him to Mrs. Rudolph. Mrs. Rudolph declined to pursue the matter.

38. Then, in December 2010, Raad filed suit (the "Raad Lawsuit") against Mrs. Rudolph and CMI seeking, among other things, appointment of a receiver for and dissolution of CMI.

### The Schemes of Frank McCollum, Bruce Bleiman and Antoine Lassiter

39. In January 2011, Mrs. Rudolph, who is 78, underwent heart surgery.

40. Her recovery was protracted and even by early Spring she was not well suited to continue in her duties as President of CMI and in managing the Independence Facility.

41. In January 2011, Bleiman, McCollum, Antoine Lassiter, and others met with Raad at the offices of Raad's attorney and discussed, among other things, their plan for taking control of CMI, the Facility and Family Forum. Mrs. Rudolph was unaware of the meeting.

42. During her recovery, at some point during March 2011, McCollum contacted Mrs. Rudolph again and restated his desire to purchase her interest in CMI.

43. McCollum asked that, as part of his due diligence, he be permitted to run the business for a short period of time at no charge to Mrs. Rudolph or to CMI.

44.     Given her need to recover rather than operate the business, Mrs. Rudolph found the offer attractive.

45.     Raad spoke with Mrs. Rudolph by telephone on several occasions and advised that he knew McCollum and that McCollum was qualified to operate the business during her recovery.  Raad encouraged her to let Mr. McCollum operate the business temporarily.

46.     McCollum stated that in the event he decided not to purchase CMI, he would return full control of CMI and the Facility to Mrs. Rudolph.

47.     Mrs. Rudolph believed McCollum's statements, relied upon them, and as a result, agreed to allow McCollum to operate CMI for a discrete period of time, understanding that after that period McCollum would purchase her shares in CMI or else relinquish all control over the business and Facility.

48.     From her heart surgery in January 2011 until roughly July 2011, Mrs. Rudolph was not an active part of the management of CMI, as explained further in the allegations below.

49.     In or about July, 2011, Mrs. Rudolph had recovered sufficiently to resume her management duties at Family Forum, CMI and Rudolph-Raad, as well as to resolve the Raad Lawsuit.

50.     Upon attempting to resume her duties, Mrs. Rudolph learned that McCollum, Bleiman, Lassiter and others had devised schemes (set out in particularity below), including misrepresentations, forgery, alteration of documents, and converting funds, in an attempt to divest Mrs. Rudolph of her interest and control over Rudolph-Raad, CMI, Family Forum and the Facility.

### Powers of Attorney

Case 3:11-cv-00617-FDW-DSC    Document 19    Filed 12/20/11    Page 7 of 32

51. On or about April 1, 2011, McCollum presented Mrs. Rudolph with a power of attorney purporting to grant McCollum certain powers to operate CMI. The duration of the power of attorney was from April 1, 2011 until the earlier of April 30, 2011, or McCollum's purchase of Mrs. Rudolph's shares in CMI. Hereafter, this power of attorney shall be referred to as the "First CMI Power of Attorney."

52. Based on McCollum's statements that he would either purchase the operations or return control to Mrs. Rudolph, Mrs. Rudolph signed the First CMI Power of Attorney.

53. There was no notary present when Mrs. Rudolph signed the First CMI Power of Attorney.

54. McCollum took the original executed First CMI Power of Attorney with him when he left and did not leave a copy with Mrs. Rudolph.

55. At some point on or after April 30, McCollum and Bleiman came to Mrs. Rudolph's home and presented her with three powers of attorney: (1) one in favor of McCollum to operate CMI through June 30 to replace the expired First CMI Power of Attorney; (2) one in favor of Antoine Lassiter to communicate, on behalf of Family Forum, with the VA; and (3) one in favor of McCollum to handle the business of Rudolph-Raad.

56. Mrs. Rudolph refused to sign the power of attorney for Rudolph-Raad.

57. Mrs. Rudolph initialed the front page of the power of attorney for CMI (hereinafter the "Second CMI Power of Attorney") to indicate the specific powers she was granting.

58. Mrs. Rudolph initialed the front page of the power of attorney for Family Forum (hereinafter the "Genuine Family Forum Power of Attorney") to indicate the specific powers she was granting.

59. There was no notary present when Mrs. Rudolph initialed the powers of attorney.

60. McCollum and Bleiman took all documents with them that day and did not leave copies for Mrs. Rudolph.

61. Defendants have recently presented a photocopy of a document that purports to be a CMI Power of Attorney granting McCollum broad powers to act for CMI through June 30, 2011 (the "Purported CMI Power of Attorney"). The Purported CMI Power of Attorney is attached hereto as Exhibit A.

62. Exhibit A has been notarized by Jennifer R. Coleman. Coleman's notary block states that Mrs. Rudolph appeared before her and signed on April 7, 2011.

63. Mrs. Rudolph has never met or spoken with Ms. Coleman.

64. The Purported CMI Power of Attorney is a forged document.

65. Recently, Defendants have presented a photocopy of a document (the "Purported Family Forum Power of Attorney") that purports to be the Genuine Family Forum Power of Attorney that Mrs. Rudolph initialed. A copy of the Purported Family Forum Power of Attorney is attached hereto as Exhibit B.

66. The Purported Family Forum Power of Attorney is in favor of McCollum, not Antoine Lassiter.

67. Although Mrs. Rudolph initialed the Genuine Family Forum Power of Attorney some time on or after April 30, Exhibit B purports to have been signed on April 7, 2011 and has been notarized by Jennifer R. Coleman.

68. Mrs. Rudolph has never met or spoken with Ms. Coleman.

69. Exhibit B is a forgery.

70. Defendants have recently presented to Mrs. Rudolph a photocopy that purports to be a power of attorney signed by Mrs. Rudolph granting McCollum broad powers to act on behalf of Rudolph-Raad from April 1, 2011 through June 30, 2011 (the "Purported Rudolph-Road Power of Attorney"). The Purported Rudolph-Raad Power of Attorney is attached as Exhibit C.

71. The Purported Rudolph-Raad Power of Attorney purports to have been signed on April 7, 2011 and is notarized by Jennifer R. Coleman.

72. Mrs. Rudolph has never met or spoken with Ms. Coleman.

73. The Purported Rudolph-Raad Power of Attorney is forged.

74. Upon information and belief, one or more of the defendants forged Exhibits A, B and C.

75. Plaintiffs have retained a retired FBI Supervisory Agent and Forensic Examiner of Questioned Documents to review the questioned documents ("Ret. FBI Agent"). The Ret. FBI Agent has confirmed that Exhibits B and C are altered and/or forged, but has not yet formed an opinion as to Exhibit A.

## New Bank Accounts and Tax Levy

76. In April 2011, McCollum and Bleiman opened new bank accounts for CMI with Park Sterling Bank. In doing so, upon information and belief, McCollum and Bleiman converted money from the old account. Upon information and belief, McCollum and Bleiman are the only authorized signatories on the new bank accounts.

77. In early April 2011, McCollum opened new bank accounts for Family Forum with Fifth Third Bank. In doing so, upon information and belief, McCollum and Bleiman converted

money from the old account. Upon information and belief, McCollum and Bleiman are the only authorized signatories on the new bank accounts.

78. After taking improper control of Family Forum, McCollum, Bleiman, and Lassiter failed to make tax payments to the Internal Revenue Service.

79. In November 2011, counsel for Mrs. Rudolph informed Fifth Third Bank that Bleiman and McCollum did not have authority to operate the new Family Forum account. Thereafter, a Fifth Third representative informed Mrs. Rudolph's counsel that the account had been frozen as a result of the failure to make the above referenced tax payments.

80. Upon information and belief, after the Fifth Third account was frozen, Bleiman opened a Bank of America account in Family Forum's name.

81. At the end of November 2011, Mrs. Rudolph was informed by the Social Security Administration that her social security payments were suspended as a result of the above referenced tax issue.

82. After the new accounts were formed, all rent from residents and all VA grant funds from Family Forum were deposited into the new accounts.

83. McCollum and Bleiman have refused to provide Mrs. Rudolph with access to the records of these accounts.

## Insurance Claim

84. On April 9, 2011, Bleiman, purporting to act on behalf of CMI, filed a claim against CMI's property insurance for damage to the roof of the Independence Facility.

85. On June 2, 2011, Philadelphia Indemnity Insurance Company paid CMI $70,022.80 in satisfaction of the claim.

86. The proceeds were deposited into a new CMI account.

87. The roof of the Facility was repaired by in-house staff at little cost.

88. Upon information and belief, one or more defendants converted the funds to their own use.

89. On August 30, 2011, an entity called BLB Contracting, LLC filed a mechanics lien against the Facility for $75,0083.57, allegedly for renovation work completed from April 29, 2011 through August 23, 2011. Bruce Bleiman signed the Claim of Lien as Manager of BLB Contracting, LLC.

## First Beacon Management Agreement

90. On or about May 12, 2011, Raad, acting on behalf of Rudolph-Raad, signed a management agreement with Beacon to manage the Facility in return for 10% of the business revenues ("First Beacon Management Agreement"). The term of the agreement is for approximately three months.

91. Beacon, which was not formed until June 2011, was merely a trade name for McCollum and Bleiman.

92. Neither Raad, McCollum, nor Bleiman informed Mrs. Rudolph of the First Beacon Management Agreement.

## Failure to Pay Creditors and the Intentional Default

93. Once Bleiman and McCollum took control of CMI, they stopped paying Rudolph-Raad's obligations to BB&T under the Note.

94. Upon information and belief, the failure to pay BB&T was and is deliberate, done for the purpose of putting the loan in default as explained further below.

95.     Beginning in April 2011, while under the control of McCollum, Bleiman and Lassiter, CMI stopped paying creditors.

96.     CMI also stopped paying Sysco Food Services of Charlotte, LLC, a food supplier for the Facility. The invoices that CMI failed to pay were for orders made and food delivered after the CMI Power of Attorney was executed.

97.     On July 15, 2011, Sysco Food Systems sued Mrs. Rudolph, individually, and CMI for failure to pay invoices.

### Second Beacon Management Agreement

98.     On or about June 25, 2011, McCollum, purporting to act on behalf of Rudolph-Raad, signed a long-term management agreement for the Facility with Beacon, which agreement gives Beacon 10% of the revenues and 20% of the profits from operations. In signing the agreement, McCollum lists himself as the attorney-in-fact for Mrs. Rudolph with regard to Rudolph-Raad.  McCollum executed this document knowing he was not attorney in fact for Rudolph Raad and that he was misrepresenting his status.

99.     McCollum, Bleiman, and Lassiter attempted to use the Second Beacon Management Agreement to usurp complete control of the facility without paying any money to Mrs. Rudolph.

### Forged Family Forum Resolution

100.    On July 9, 2011, McCollum emailed Mrs. Rudolph a group of documents for her signature, which documents attempted to accomplish the following:

a. Acknowledge a loan from Beacon to CMI in the amount of $60,000;

b. Authorize a transfer of all of the Facility furniture and furnishings to Beacon in return for Beacon's forgiveness of the "loan;"

c. Authorize the termination of the CMI Lease;

d. Transfer all of Mrs. Rudolph's stock in CMI to an entity known as Brodi Holdings, LLC and controlled by Bleiman's wife for $1;

e. Add three directors (Bleiman, Weeks and Lassiter) to the Family Forum Board;

f. Appoint all new officers for Family Forum (Lassiter, Bleiman, Weeks and McCollum); and

g. Transfer all resident contracts from CMI to Beacon and allow Beacon to begin signing contracts with the VA for residents at the Facility.

101. Upon information and belief, Mrs. Rudolph's equity interest in Rudolph-Raad exceeds $350,000.

102. Mrs. Rudolph refused to sign the submitted documents.

103. Thereafter McCollum, purporting to act under the Purported Family Forum Power of Attorney ("Exhibit B") as the sole director of Family Forum, adopted a resolution ("Family Forum Resolution") doing the very things that Mary Rudolph had refused to do earlier. A true and accurate copy of the Family Forum Resolution is attached hereto as Exhibit D. The Family Forum Resolution:

a. Added three more directors to the Family Forum board, which directors are Bleiman, Weeks and Lassiter;

b.      Elected all the following officers: Antoine Lassiter (Pres.); Bruce Bleiman (VP); Bob Weeks (Sec./Treas.); and

c.      Authorized Mrs. Rudolph to transfer to Beacon certain resident agreements between CMI and its residents.

104. Upon information and belief, this resolution was not adopted until after July 9, 2011, when Mrs. Rudolph refused to make such changes herself.

105. Upon information and belief, the Family Forum Resolution was backdated to April 26, 2011.

106. Using the forged Family Forum POA and the improper Family Forum Resolution, Bleiman and Lassiter attempted to hold a Family Forum Director's meeting on December 1, 2011. Prior to this meeting, Mrs. Rudolph provided Bleiman and Lassiter with the Ret. FBI Agent's report and further notified that they had no authority to conduct the meeting.

107. Nevertheless, Bleiman and Lassiter held a meeting on December 1, 2011 in which they purportedly voted Mrs. Rudolph out as a director of the company. In effect, Bleiman and Lassiter attempted to effectuate the final effort to squeeze Mrs. Rudolph out of the company she formed more than 30 years ago.

### Wind N Sea Holdings, LLC

108. On August 1, 2011, unbeknownst to Mrs. Rudolph, BB&T executed an agreement to sell the Note to an entity to be known as Wind N Sea Holdings, LLC ("Wind N Sea").

109. According to John Beasley of BB&T, Bleiman negotiated the sale of the Note from BB&T to Wind N Sea.

110.    On August 2, 2011, Wind N Sea was formed as a North Carolina limited liability company. Its organizer is Peter N. Carlino, who is the organizer of at least 6 corporations or limited liability companies associated with Bleiman, including BLB Contracting, LLC.

111.    On August 4, 2011, Mrs. Rudolph and Raad attended a mediated settlement conference for the Raad Lawsuit. At the mediation, Mrs. Rudolph and Raad reached an agreement ("Settlement Agreement") whereby:

a.    A receiver would be appointed for CMI, which receiver would wind up the company's affairs and distribute any remaining assets;

b.    Mrs. Rudolph would pay any arrearage on the Note to BB&T and any arrearage owed to the second lien holder, Centralina Development Corporation, Inc. ("CDC");

c.    Mrs. Rudolph would provide Raad with a letter of credit to secure the future payment of the BB&T Indebtedness and the debt to CDC; and

d.    Upon delivery of the letter of credit, Raad would transfer his interest in Rudolph-Raad to Mrs. Rudolph.

112.    At the time she executed the Settlement Agreement, Mrs. Rudolph was wholly unaware of the sale of the Note to Wind N Sea.

113.    At the time she executed the Settlement Agreement, Mrs. Rudolph was unaware of the other actions, forgeries, etc. of Bleiman, McCollum and others.

114.    From August 5 through August 8, 2011, Mrs. Rudolph and her son Robert Rudolph made multiple calls to BB&T trying to learn the total arrearage on the Note and asking whether BB&T preferred for Rudolph-Raad to refinance the entire Indebtedness with another lender or simply cure the default.

115. BB&T was wholly unresponsive until mid August 2011, when BB&T's John Beasley confirmed to Robert Rudolph that the Note had been sold to Wind N Sea, which sale had been negotiated by Bleiman.

116. On August 18, 2011, Wind N Sea wrote to Mrs. Rudolph in her capacity as President of Rudolph-Raad and declared default under the Note, accelerated the amounts due, and announced its intent to foreclose on the Independence Facility.

117. On August 19, 2011, Wind N Sea wrote to Mrs. Rudolph in her personal capacity and demanded that she pay the Indebtedness pursuant to her personal guaranty.

118. On November 29, 2011, Wind N Sea filed a Notice of Hearing on Foreclosure of the Deed of Trust. The hearing is set for January 12, 2012.

119. The cover letter from the Substitute Trustee serving the Notice contains a footer indentifying the matter as being initiated by Bleiman. Specifically, the footer reads, "Bruce Bleiman v. Rudolph-Raad, Inc."

### Civil Conspiracy

120. Bleiman, McCollum, Lassiter, Beacon, and Wind n Sea ("Conspiring Defendants") are engaged in an active conspiracy to defraud and convert funds from Mrs. Rudolph, divest her of her interest in various companies, and force an improper sale of the property. Based on this conspiracy all actions of each of these Defendants must be imputed to the other Defendant.

### FIRST CLAIM FOR RELIEF – VIOLATION OF THE RACKETEER INFLUENCE AND CORRUPT ORGANIZED ACT, 18 U.S.C. §§ 1961, et. seq. ("Civil RICO")

**(Mrs. Rudolph, Rudolph-Raad, Family Forum v. McCollum, Bleiman, Lassiter, Beacon, Wind N Sea)**

121. Plaintiffs reallege the preceding allegations as if fully set forth herein.

122. At all times pertinent to this action, the Defendants were engaged in a common enterprise to defraud Plaintiffs.

123. The Defendants used United States Mail, wire services (including telephone), and internet services to further their illegal acts.

124. The Defendants actions constitute bank fraud.

125. Defendants, acting in furtherance of this enterprise, committed at least two predicate acts, which constitute a pattern of racketeering activity.

126. The predicate acts described herein affect interstate commerce and are continuing in nature.

127. As a direct and proximate result of the Defendants' conduct, Plaintiffs have suffered actual harm, and are entitled to compensatory damages in an amount to be determined at trial, but believed to be in excess of $10,000.00.

128. In addition, Plaintiffs are entitled to recover treble damages and attorneys' fees pursuant to 18 U.S.C. §§ 1961, et seq.

## SECOND CLAIM FOR RELIEF – DECLARATION OF FORGED AND INVALID DOCUMENTS

### (Mrs. Rudolph, Rudolph-Raad and Family Forum v. Beacon, Bleiman, McCollum and Lassiter)

129. Plaintiffs reallege the preceding allegations as if fully set forth herein.

130. Exhibits A, B, C and D are forged or otherwise invalid.

131. This is an actual, justiciable controversy and Mrs. Rudolph, Rudolph-Raad and Family Forum are entitled to a declaration that:

    a. The Purported CMI Power of Attorney is forged; and

    b. The Purported Rudolph-Raad Power of Attorney is forged; and

c. As a result, McCollum had no authority to sign the Second Beacon Management Agreement; and

d. The Second Beacon Management Agreement is voidable; and

e. The Purported Family Forum Power of Attorney is forged; and

f. As a result, Frank McCollum had no authority to adopt the Family Forum Resolution and the directives stated therein; and

g. Thus the Family Forum Resolution has no legal effect; in other words, Mrs. Rudolph remains the sole director and officer of Family Forum; and

h. Mrs. Rudolph was fraudulently induced to sign or initial the First and Second CMI Powers of Attorney; and

i. Mrs. Rudolph was fraudulently induced to sign or initial the Genuine Family Forum Power of Attorney.

## THIRD CLAIM FOR RELIEF - FRAUD

### (Mrs. Rudolph, Rudolph-Raad and Family Forum v. Beacon, McCollum, Bleiman and Lassiter,)

132. Plaintiffs reallege the preceding allegations as if fully set forth herein.

133. McCollum, Bleiman, Lassiter and Beacon (through its agents) lied to Mrs. Rudolph, in her individual capacity, and in her capacity as an officer and shareholder and/or director of Rudolph-Raad, CMI and Family Forum about their qualifications, their purposes, motives, and about the legal documents they presented to her.

134. The Defendants of this claim forged documents in order to conduct business without Mrs. Rudolph's approval.

135. McCollum, Bleiman, Lassiter and Beacon (through its agents) deliberately withheld from Mrs. Rudolph, in her individual capacity and in her capacity as an officer and

shareholder and/or director of Rudolph-Raad, CMI and Family Forum, material information which the defendants were under a duty to tell Mrs. Rudolph.

136. McCollum, Bleiman, Lassiter and Beacon (through its agents) did so with the intent to defraud Mrs. Rudolph, Rudolph Raad, CMI and Family Forum.

137. Mrs. Rudolph, in her individual and official capacities, reasonably relied to her detriment on those representations and omissions.

138. Plaintiffs were damaged by defendants' fraudulent scheme in that defendants

a. diverted money from Rudolph-Raad, CMI and Family Forum; and

b. took control of all three businesses and temporarily divested Mrs. Rudolph of her interest, control and livelihood; and

c. damaged the going concern value of all three businesses; and

d. caused Rudolph-Raad to default on the Note, and thus subjected the Independence Facility to foreclosure.

139. If defendants are allowed to continue to control the businesses, Mrs. Rudolph, Rudolph-Raad and Family Forum will suffer irreparable harm because the defendants will a) continue divert money until the going concern value of each business is destroyed; and b) Rudolph-Raad will lose the Independence Facility in foreclosure.

140. Plaintiffs are entitled to an injunction requiring Beacon, McCollum, Bleiman and Lassiter to cease and desist from operating the Facility and to stay off the premises of the Independence Facility.

141. Plaintiffs are entitled to an injunction requiring Beacon, McCollum, Bleiman and Lassiter to cease and desist from taking actions or purporting to act on behalf of any of the Plaintiffs.

142.    Plaintiffs are entitled to compensatory damages in an amount to be determined at trial.

143.    In the course of their conduct, Beacon, McCollum, Bleiman, and Lassiter have come into possession of property and money of the Plaintiffs that in good conscience, they should not retain.

144.    The property and money is subject to a constructive trust in favor Plaintiffs.

145.    Defendants' action were malicious, willful and wanton and entitle Plaintiffs to punitive damages pursuant to N.C. Gen. Stat. § 1D -5, in an amount to be proven at trial.

146.    The actions of the defendants to this claim created an indivisible injury, and the defendants are joint tortfeasors, jointly and severally liable to Plaintiffs.

## FOURTH CLAIM FOR RELIEF – NEGLIGENT MISREPRESENTATION
### (in the alternative)

### (Mrs. Rudolph, Rudolph-Raad, Family Forum v. McCollum, Bleiman, Lassiter and Beacon)

147.    Plaintiffs reallege the preceding allegations as if fully set forth herein.

148.    McCollum, Bleiman, Lassiter and Beacon (through its agents) negligently misrepresented to Mrs. Rudolph, in her individual capacity, and in her capacity as an officer and shareholder and/or director of Rudolph-Raad, CMI and Family Forum about their qualifications, their purposes, motives, and about the legal documents they presented to her.

149.    McCollum, Bleiman, Lassiter and Beacon (through its agents) withheld from Mrs. Rudolph, in her individual capacity and in her capacity as an officer and shareholder and/or director of Rudolph-Raad, CMI and Family Forum, material information which the defendants were under a duty to tell Mrs. Rudolph.

150. Mrs. Rudolph, in her individual and official capacities, reasonably relied to her detriment on those representations and omissions.

151. Plaintiffs were damaged by defendants' misrepresentations and omissions as set forth above.

152. Plaintiffs were damaged by defendants' misrepresentations and omissions as described above.

153. If defendants are allowed to continue to control the business, Mrs. Rudolph, Rudolph-Raad and Family Forum will suffer irreparable harm because the defendants will a) continue divert money until the going concern value of each business is destroyed; and b) Rudolph-Raad will lose the Independence Facility in foreclosure.

154. Plaintiffs are entitled to a injunction requiring Beacon, McCollum, Bleiman and Lassiter to cease and desist from operating the Facility and to stay off the premises of the Independence Facility.

155. Plaintiffs are entitled to an injunction requiring Beacon, McCollum, Bleiman and Lassiter to cease and desist from taking actions or purporting to act on behalf of any of the Plaintiffs.

156. Plaintiffs are entitled to compensatory damages in an amount to be determined at trial.

157. The actions of the defendants to this claim created an indivisible injury, and the defendants are joint tortfeasors, jointly and severally liable to the claimants.

## FIFTH CLAIM FOR RELIEF – TRESPASS

### (Rudolph-Raad v. Beacon, McCollum, Bleiman and Lassiter)

158. Plaintiffs reallege the preceding allegations as if fully set forth herein.

159. As of the date of this Complaint, Defendants have not done so.

160. The Defendants' past and continued presence at the Independence Facility is unauthorized and constitutes trespass.

161. As a result of the trespass, Rudolph-Raad has been damaged as described above, and is entitled to recover damages in an amount to be proven at trial.

162. Rudolph-Raad is entitled to an injunction requiring Defendants to leave the Independence Facility.

## SIXTH CLAIM FOR RELIEF - FRAUD

### (Rudolph-Raad v. Wind N Sea)

163. Plaintiffs reallege the preceding allegations as if fully set forth herein.

164. Wind N Sea acquired the Note and its security, including the Deed of Trust, through the fraudulent schemes of Wind N Sea, Bleiman and possibly others, as alleged above.

165. Wind N Sea has come into possession of the Note and the security, including the Deed of Trust, under circumstances in which in good conscience Wind N Sea should not retain the Note and its security, including the Deed of Trust.

166. The Note and the security, including the Deed of Trust, are subject to a constructive trust in favor of Rudolph-Raad.

## SEVENTH CLAIM FOR RELIEF – ENJOIN FORECLOSURE UNDER N.C. Gen. Stat. 45-21.34

### (Rudolph-Raad v. Trustee, Wind N Sea)

167. Plaintiffs reallege the preceding allegations as if fully set forth herein.

168. The allegations stated above constitute both legal and equitable grounds for enjoining the foreclosure of the Deed of Trust, as provided by N.C. Gen. Stat. § 45-21.34.

## EIGHTH CLAIM FOR RELIEF – BREACH OF FIDUCIARY DUTIES (In the alternative)

### (Mrs. Rudolph v. McCollum, Lassiter)

169. Plaintiffs reallege the preceding allegations as if fully set forth herein.

170. If the First and Second CMI Powers of Attorney were enforceable and valid during their terms, which Plaintiffs deny, then McCollum was Mrs. Rudolph's attorney-in-fact.

171. As a result, McCollum owed Mrs. Rudolph fiduciary duties of honesty, loyalty and good faith.

172. If the Genuine Family Forum Power of Attorney was enforceable and valid during its term, which Plaintiffs deny, then Lassiter was Mrs. Rudolph's attorney-in-fact.

173. As a result, Lassiter owed Mrs. Rudolph fiduciary duties of honesty, loyalty and good faith.

174. McCollum and Lassiter breached those duties as alleged herein.

175. As a result of the breaches, Mrs. Rudolph has been damaged in an amount to be determined at trial, but not less than $10,000.

176. Defendants' action were malicious, willful and wanton and entitle Mrs. Rudolph to punitive damages pursuant to N.C. Gen. Stat. § 1D -5, in an amount to be proven at trial.

177. The actions of the McCollum and Lassiter created an indivisible injury, and McCollum and Lassiter are joint tortfeasors, jointly and severally liable to Mrs. Rudolph.

## NINTH CLAIM FOR RELIEF – UNFAIR AND DECEPTIVE TRADE PRACTICES

### (Mrs. Rudolph, Rudolph-Raad, Family Forum v. McCollum, Bleiman, Lassiter, Beacon, Wind N Sea)

178. Plaintiffs reallege the preceding allegations as if fully set forth herein.

179. The conduct of the defendants of this claim, as alleged herein, constitutes unfair

and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 because the conduct is unfair and deceptive, is in or affecting commerce, and is proximately causing injury to the Plaintiffs.

180.    Plaintiffs are entitled to compensatory damages, in an amount to be proven at trial but no less than $10,000.

181.    Pursuant to N.C. Gen. Stat. § 75-1.16, Plaintiff are entitled to have their compensatory damages trebled.

182.    Pursuant to N.C. Gen. Stat. § 75-16.1, Plaintiffs are entitled to their attorneys' fees related to bringing this claim.

183.    The actions of the defendants to this claim created an indivisible injury, and the defendants are joint tortfeasors, jointly and severally liable to the claimants.

## TENTH CLAIM FOR RELIEF – CONVERSION

### (Mrs. Rudolph, Rudolph-Raad, Family Forum v. McCollum, Bleiman, Lassiter, Beacon)

184.    Plaintiffs reallege the preceding allegations as if fully set forth herein.

185.    The conduct of the defendants to this claim constitutes a conversion of money and property of Plaintiffs.

186.    The Plaintiffs are entitled to their compensatory damages arising out of such conversion in an amount to be proven at trial, but no less than $10,000.

187.    Defendants' action were malicious, willful and wanton and entitle Plaintiffs to punitive damages pursuant to N.C. Gen. Stat. § 1D -5, in an amount to be proven at trial.

188.    The actions of the defendants to this claim created an indivisible injury, and the defendants are joint tortfeasors, jointly and severally liable to the Plaintiffs.

## ELEVENTH CLAIM FOR RELIEF – TORTIOUS INTERFERENCE WITH CONTRACT

**(Rudolph-Raad v. McCollum, Bleiman, Lassiter, Beacon)**

189. Plaintiffs reallege the preceding allegations as if fully set forth herein.

190. Rudolph-Raad had a valid agreement with CMI pay the monthly obligation on the Note.

191. The defendants of this claim were aware of the contracts.

192. The defendants of this claim intentionally caused CMI not to perform the contract.

193. The defendants acted without justification.

194. Plaintiffs were damaged by the interference in an amount to be proven at trial but in excess of $10,000.

195. Defendants' action were malicious, willful and wanton and entitle Plaintiffs to punitive damages pursuant to N.C. Gen. Stat. § 1D -5, in an amount to be proven at trial.

196. The actions of the defendants to this claim created an indivisible injury, and the defendants are joint tortfeasors, jointly and severally liable to the claimants.

## TWELFTH CLAIM FOR RELIEF – TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

**(Mrs. Rudolph, Rudolph-Raad, Family Forum v. McCollum, Bleiman, Lassiter, Beacon, Wind N Sea)**

197. Plaintiffs reallege the preceding allegations as if fully set forth herein.

198. As alleged herein, the conduct of the defendants to this claim including, but not limited to, interfering with vendors, the lender, the residents, and the VA, interfered with Plaintiffs' existing and prospective business opportunities.

199. The defendants acted without justification.

200. Plaintiffs were damaged by the interference in an amount to be proven at trial but

in excess of $10,000.

201. Defendants' actions and breaches of their duties, as set forth above, were malicious, willful and wanton, and entitle Plaintiffs to an award of punitive damages pursuant to N.C. Gen. Stat. § 1D-5, in an amount to be proven at trial.

202. The actions of the defendants to this claim created an indivisible injury, and the defendants are joint tortfeasors, jointly and severally liable to the claimants.

## THIRTEENTH CLAIM FOR RELIEF – NEGLIGENCE (In the alternative)

### (Mrs. Rudolph, Rudolph-Raad, Family Forum v. McCollum, Bleiman, Lassiter, Beacon)

203. Plaintiffs reallege the preceding allegations as if fully set forth herein.

204. The defendants to this claim owed a duty to Plaintiffs, to conduct the businesses in a prudent and reasonable manner.

205. Defendants breached those duties.

206. Plaintiffs were damaged by the breach in an amount to be proven at trial but in excess of $10,000.

207. The actions of the defendants to this claim created an indivisible injury, and the defendants are joint tortfeasors, jointly and severally liable to the Plaintiffs.

## FOURTEENTH CLAIM FOR RELIEF – DEMAND TO INSPECT CORPORATE RECORDS

### (Mrs. Rudolph v. McCollum, Bleiman, Lassiter, Beacon, CMI Receiver)

208. Plaintiffs reallege the preceding allegations as if fully set forth herein.

209. Pursuant to N.C. Gen. Stat. § 55-16-02, Mrs. Rudolph is entitled to inspect and copy the corporate records , including the accounting records, of Rudolph-Raad, CMI and Family Forum.

210. Mrs. Rudolph has requested to inspect such records for the period dating from and after April 1, 2011, but the defendants have denied her that right.

211. Defendants have no good faith basis for denying Mrs. Rudolph that right.

212. Pursuant to N.C. Gen. Stat. § 55-16-04, Mrs. Rudolph is entitled to a court order requiring the defendants to permit inspection and copying of the requested records for the period of April 1, 2011 though the date of inspection.

213. Pursuant to N.C. Gen. Stat. § 55-16-04, Mrs. Rudolph is entitled to an award of her costs, including reasonable attorneys' fees, incurred in bringing this claim.

## PRAYER FOR RELIEF

Therefore, Plaintiffs respectfully ask the Court to

1. Take this Verified Complaint as an affidavit in support of any motions by Plaintiffs for emergency or preliminary injunctive relief;

2. Declare that Exhibits A, B and C are forged;

3. Declare that the Family Forum Resolution is of no effect and that the Second Beacon Management Agreement is voidable;

4. Enjoin Wind N Sea and the Trustee from foreclosing on the Note;

5. Establish a constructive trust for the Note in favor of Mrs. Rudolph;

6. Order Beacon to cease and desist from managing the Facility and order that Beacon and its personnel vacate the Facility;

7. Enjoin Beacon, Bleiman, McCollum and Lassiter from taking any action by or on behalf of Rudolph-Raad or Family Forum.

8. Order Beacon, Bleiman, McCollum, Lassiter and the CMI Receiver to permit Mrs. Rudolph to inspect the corporate Records of Rudolph-Raad, CMI and Family Forum;

.

9. Order Beacon, Bleiman, McCollum and Lassiter to disgorge any moneys wrongfully diverted from Family Forum or Rudolph-Raad;

10. Enter Judgment for Mrs. Rudolph, Rudolph Raad and Family Forum on their claims;

11. Award Plaintiffs their compensatory damages in an amount to be determined at trial but in excess of $10,000;

12. Award Plaintiffs exemplary damages;

13. Award Plaintiffs their attorneys' fees where provided by law;

14. Allow a trial by jury on all issues so triable;

15. Tax the costs of this action against Beacon, Bleiman, Lassiter, McCollum, and Wind N Sea; and

16. Grant such other relief as the Court deems just.


This the 20th day of December, 2011.


HAMILTON STEPHENS
STEELE & MARTIN, PLLC

By: /s/ Adam L. Horner
Adam L. Horner (NC Bar # 32732)

/s/ Rebecca K. Cheney
Rebecca K. Cheney (NC Bar #20998)
2020 Charlotte Plaza
201 South College Street
Charlotte, North Carolina 28244-2020
Telephone: 704/344-1117
Attorneys for Plaintiffs

STATE OF NORTH CAROLINA )
)
COUNTY OF MECKLENBURG )

I, Mary B. Rudolph, being first duly sworn, depose and say that I am an officer of Rudolph-Raad, Inc. and Family Forum, Inc. and have read the foregoing Verified Complaint and know the contents thereof; that the matters and things alleged therein are true of my own knowledge, except as to those matters and things alleged upon information and belief, and as to said matters, I believe them to be true.

_____
Mary B. Rudolph, Individually


Rudolph-Raad, Inc.

_____
Mary B. Rudolph
Title: Officer


Family Forum, Inc.
_____
Mary B. Rudolph
Title: Officer


SWORN TO and subscribed before
me this 20 day of December, 2011.

_____
NOTARY PUBLIC
My commission expires: March 26, 2013



<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing was served upon all parties of record by electronically filing a copy of the same with the Court's ECF filing system which will send electronic notification by e-mail to:

> William R. Terpening
> Peter C. Anderson
> Anderson Terpening, PLLC
> 409 East Blvd.
> Charlotte, NC 28203
> wrt@andersonterpening.com
> pa@houseofdefense.com
> *Attorneys for Defendant Frank McCollum*

I hereby certify that a copy of the foregoing was served upon all parties of record via first class US Mail, as specified below:

Beacon Independent Living, LLC
c/o Brandy Gaiser, Registered Agent or
c/o Officer, Director or Managing Agent
3501 East Independence Boulevard
Charlotte, NC 28205

Wesley L. Deaton, Substitute Trustee
Pendleton, Pendleton & Deaton, P.A.
PO Box 2459
Denver, NC 28037

Wind N Sea Holdings, LLC
c/o National Corporate Research, LTD.,
Registered Agent or
c/o Officer, Director or Managing Agent
212 S. Tryon street, Suite 1000
Charlotte, NC 28281

Robert N. Burris, Substitute Trustee
Burris, Macmillan, Pearce & Burris, PLLC
6857 Fairview Road
Charlotte, NC 28210

Bruce L. Bleiman
4721 Cambridge Crescent Dr.
Charlotte, NC 28226

Charlottetown Manor, Inc.
c/o Ed Bowers, Receiver
219 Wilmot Drive
Gastonia, NC 28054

Antoine Lassiter
11542 Stewarts Crossing Drive
Charlotte, NC 28215
*Via USPS First Class*

{00251499.DOC V. R185.019113;}          31

HAMILTON STEPHENS
STEELE & MARTIN, PLLC

By:    /s/ Adam L. Horner             
Adam L. Horner (NC Bar # 32732)
ahorner@lawhssm.com

/s/ Rebecca K. Cheney         
Rebecca K. Cheney (NC Bar #20998)
bcheney@lawhssm.com

201 South College Street, Suite 2020
Charlotte, North Carolina 28244-2020
Telephone: 704/344-1117
Attorneys for Plaintiffs

{00251499.DOC V. R185.019113;}        32